[No. 882-3.    Division Three.    April 14, 1975.]

WASHINGTON NICKEL MINING & ALLOYS, INC., et al, Appellants, v. ARTHUR A. MARTIN et al, Respondents.

*Edmund J. Jones* and *R. Wayne Cyphers*, for appellants.

*Hamilton, Lynch & Kuntz, Edward Engst, H. B. Hanna,* and *W. Gordon Kelley*, for respondents.

GREEN, J.—Plaintiff, Washington Nickel Mining & Alloys, Inc., for whom its successor-in-interest, Ross E. Donald, was substituted during trial, brought this action to quiet title to certain real property allegedly occupied by the defendants Archambault and Martin. Defendants Archambault denied plaintiff's allegations and cross claims, not here pertinent, were filed between the Archambaults and their contract purchaser Martin. After trial the court held that plaintiff failed in its burden of proof to establish that the defendants are now occupying land owned by the plaintiff and dismissed the complaint. Plaintiff appeals.

Whether defendants are occupying plaintiff's

property depends upon the location of the beginning point in a legal description, *i.e.*, the east quarter corner of section 24, Township 23 North, Range 17 E.W.M., Chelan County. The evidence as to the location of this corner is disputed. Plaintiff contends the corner is a "lost corner" while defendants Archambault contend it is an "obliterated corner." The difference between these two approaches is summarized in *Martin v. Neeley*, 55 Wn.2d 219, 222-23, 347 P.2d 529 (1959):

The distinction between a lost corner and an obliterated corner is set out in 11 C.J.S. 553, Boundaries, § 13, as follows:

". . . an obliterated corner may be defined as one of which no visible evidence remains of the work of the original surveyor in establishing it but of which the location may be shown by competent evidence. A lost corner is one which cannot be replaced by reference to any existing data or *sources of information*, although it is not necessary that evidence of its physical location may be seen or that one who has seen the marked corner be produced." (Italics ours.)

The applicable law is stated in *Hale v. Ball*, 70 Wash. 435, 126 Pac. 942 (1912), as follows:

"While presumptively quarter section corners are set upon a true line and at a point equidistant between section corners, it is well known that it is not always so. In fact, the carelessness and inattention marking the original government surveys in this part of the country have led the courts to say of their own judicial knowledge that a survey is seldom correct. *Koenig v. Whatcom Falls Mill Co.*, 67 Wash. 632, 122 Pac. 16; *Hyde v. Phillips*, 61 Wash. 314, 112 Pac. 257. When it is made to appear by competent evidence that a government monument does not accord with the survey or plat, the corner as established on the ground must control. . . .

". . . If no monument or marking of a quarter corner can be found, or the testimony of its location be overcome by better evidence, a court will decree the establishment of a corner under the rule prevailing in the land department of the United States; that is, at a point equidistant from the section corners. *King v. Carmichael*, 45 Wash. 127, 87 Pac. 1120; *Koenig v. Whatcom Falls Mill Co. supra*. But it does not follow that, if there be evi-

dence of a corner which has been destroyed or obliterated by the lapse of time, a court will direct the establishment of a corner under the rule stated, or any other rule, for the law establishes an obliterated corner where the surveyor actually located it, and not where it ought to be located by a correct survey. *Inmon v. Pearson*, 47 Wash. 402, 92 Pac. 279."

Based on the assumption of a "lost corner," plaintiff's surveyor argued that the defendants' buildings were on plaintiff's property. However, defendants' surveyors testified that while they did not find the original corner post, they found the bearing trees referred to in the original survey notes and were able to reestablish the original corner. This reestablished corner was located at a point different from the one plaintiff established by proportional distance.

▆ After considering the testimony of the experts, the trial court found that plaintiff had failed to establish that the east quarter corner of section 24 was a "lost corner" and went on to find that, by clear and convincing evidence, the defendants had established an "obliterated corner." The findings of the trial court are supported by substantial evidence and will not be disturbed.

Whether the defendants' buildings are encroaching on plaintiff's property depends upon the location of the disputed north-south boundary line which in turn depends upon the location of the east quarter corner. On appeal, plaintiff contends that the court's decision does not resolve the question of where the boundary line is actually located and, therefore, we should remand for determination of this issue. This we decline to do.

The evidence accumulated during trial related almost entirely to the location of the east quarter corner, *i.e.*, whether that corner was "lost" or "obliterated." The trial court found the latter. It is clear from the evidence that neither party actually conducted a survey on the ground and staked the disputed boundary under either theory. Thus, the precise location of this boundary was not established at trial. The only issue resolved was that the point of beginning of the legal description is an "obliterated" rather

than a "lost" corner. We hold that the trial court's dismissal of plaintiff's complaint was proper, but that the judgment of dismissal is res judicata only as to the trial court's finding that the east quarter corner of section 24 is an "obliterated corner."

In the event a survey using the "obliterated corner" as the point of beginning fails to resolve the dispute between the parties, then the parties may seek a determination of the location of the disputed boundary line in a future action.

Affirmed.

McINTURFF, C.J., and MUNSON, J., concur.

Petition for rehearing denied July 2, 1975.

Review denied by Supreme Court November 5, 1975.