# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, a Florida corporation,<br><br>          Appellant,<br><br>          v.<br><br>CLAYTON HORTON, a citizen of the State of Washington, individually and as a member of the marital community comprise of Clayton Horton and Melissa Horton; and MELISSA HORTON, a citizen of the State of Washington, individually and as a member of the marital community comprised of Clayton Horton and Melissa Horton,<br><br>          Respondents. | No. 87270-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — Fidelity National Title Insurance Company (Fidelity) sued Clayton and Melissa Horton (Hortons) for damages based on claims that they breached statutory warranty deed covenants in the sale of three vacant lots in Puyallup. The trial court dismissed Fidelity's claims on summary judgment and awarded attorney fees to the Hortons. Fidelity appeals and argues that there was no basis in statute, contract, or equity to support the award of attorney fees. We agree. We reverse and vacate the award of attorney fees.

I

On June 19, 2021, the Hortons entered into a vacant land purchase and sale agreement (Coba PSA) to sell three lots in downtown Puyallup (the properties) to Coba Construction LLC (Coba).[1] An addendum to the Coba PSA stated that if building permits were not approved for Coba by August 16, 2021, Coba's $30,000 earnest money deposit would become nonrefundable and would be released to the Hortons. The addendum provided for automatic 14-day extensions until the building permits were procured from the City of Puyallup.

On January 16, 2022, the Hortons entered into a second real estate purchase and sale agreement to sell the properties to Hello Pad LLC. That same day Hello Pad assigned its contract/interest to the lots to West Coast Custom Homes LLC (West Coast).

Meanwhile, on January 25, 2022, Coba recorded a memorandum of agreement identifying the properties and stating that it had entered into the Coba PSA on June 19, 2021.

On February 10, 2022, the Hortons transferred title to the properties to West Coast by statutory warranty deed.

On February 16, 2022, Fidelity insured title to the properties in favor of West Coast (the policy). Under the policy, Fidelity was subrogated to West Coast's claims against third parties who cause a loss under the same.

---

[1] While some of the documents at issue include Clayton Horton's name only, we refer to the Hortons collectively.

On March 22, 2022, Coba sued the Hortons and West Coast for breach of contract, equitable relief, and tortious interference with business relationships (Coba complaint). Coba sought specific performance or damages against the Hortons for breach of the Coba PSA, and damages against West Coast for tortious interference. Coba also sought attorney fees and costs under the Coba PSA.

Fidelity retained counsel to defend and potentially indemnify West Coast in connection with the Coba complaint. On May 18, 2022, Fidelity tendered defense of the claims asserted against West Coast to the Hortons under the statutory warranty deed. The Hortons did not respond by the agreed May 31, 2022 response deadline.

On July 28, 2022, Fidelity, on behalf of West Coast, paid $75,000 to Coba for settlement and dismissal of Coba's claims against West Coast. Fidelity also incurred $4,523.69 in litigation expenses. The Hortons settled with Coba on March 20, 2023, and all remaining claims against the Hortons were dismissed.

On March 24, 2023, as West Coast's subrogee, Fidelity sued the Hortons for breach of the statutory warranty deed. The complaint alleged that the Hortons breached the promise that they had good right and full power to convey the properties, and the promise to defend title against lawful claims against the properties. Fidelity sought $75,000 in damages, which was the amount of the settlement with Coba, and the $4,523.69 it had incurred in attorney fees.

Fidelity's breach of warranty deed claims against the Hortons were dismissed on summary judgment. The Hortons then moved the trial court for an award of their attorney fees and costs. On June 14, 2024, the trial court entered judgment for the Hortons in the amount of $37,286.51. The trial court determined that there was a

statutory, contractual, and equitable basis that justified an award of attorney fees to the Hortons.

After Fidelity unsuccessfully moved for reconsideration, the trial court added an additional $3,100 in attorney fees for the Hortons' defense of the motion for reconsideration.

Fidelity appeals.

II

Whether a party is entitled to an award of attorney fees is a question of law that we review de novo. Durland v. San Juan County, 182 Wn.2d 55, 76, 340 P.3d 191 (2014). Washington "follows the 'American rule' on attorney fees, which provides that attorney fees are not recoverable by the prevailing party as costs of litigation unless the recovery is permitted by contract, statute, or some recognized ground of equity." Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 143, 930 P.2d 288 (1997).

A

Under Washington law, "for purposes of a contractual attorneys' fee provision, an action is on a contract if the action arose out of the contract and if the contract is central to the dispute." Seattle First Nat'l Bank v. Wash. Ins. Guar. Ass'n, 116 Wn.2d 398, 413, 804 P.2d 1263 (1991). If the claim did not arise out of the contract, attorney fees are not proper. See, e.g., Tradewell Grp., Inc. v. Mavis, 71 Wn. App. 120, 130, 857 P.2d 1053 (1993) (claims for tortious interference, unjust enrichment, and promissory estoppel did not arise out of an undelivered lease agreement that contained an attorney fees clause); CPL (Delaware) LLC v. Conley, 110 Wn. App. 786, 796, 40 P.3d 679

(2002) (dispute over memorandum agreement that did not contain an attorney fees clause did not arise out of related purchase agreements that included an attorney fees clause).

Fidelity argues that the trial court erred in awarding attorney fees based on contract. This is so, Fidelity contends, because it was neither a party to the Coba PSA nor did its action against the Hortons arise out of the Coba PSA. We agree.

It is undisputed that the Coba PSA contained an attorney fees clause. The Coba PSA provided that "if Buyer or Seller institutes suit against the other concerning this Agreement . . . the prevailing party is entitled to reasonable attorneys' fees and expenses." The Hortons admit that Fidelity was not a party to the Coba PSA, but argue that as West Coast's subrogee, Fidelity "presumably also would have been able to seek fees [under the agreement.]" But this is in direct contradiction with the plain language of the attorney fees provision in the Coba PSA. Neither West Coast nor Fidelity was a seller nor a buyer under the Coba PSA, and thus Fidelity was not a party to the contract.

Further, Fidelity's claims against the Hortons did not arise out of the Coba PSA. Coba sued the Hortons for breach of the Coba PSA and West Coast for tortious interference with business relations. After Fidelity, on behalf of West Coast, tendered defense of the claims to the Hortons and the Hortons did not respond, Fidelity sued the Hortons for breaching the statutory warranty deed. Fidelity's claims against the Hortons did not arise out of the Coba PSA. See, e.g., Tradewell, 71 Wn. App. at 130; CPL (Delaware), 110 Wn. App. at 796.

The Hortons were not entitled to attorney fees against Fidelity under contract.

B

Fidelity next argues that the trial court erred in determining that there was a statutory basis for attorney fees under Washington's warranty deed statute, RCW 64.04.030.  We agree.

RCW 64.04.030 provides that every duly executed warranty deed

shall be deemed and held a conveyance in fee simple to the grantee, his or her heirs and assigns, with covenants on the part of the grantor: (1) [t]hat at the time of the making and delivery of such deed he or she was lawfully seized of an indefeasible estate in fee simple, in and to the premises therein described, and had good right and full power to convey the same; (2) that the same were then free from all encumbrances; and (3) that he or she warrants to the grantee, his or her heirs and assigns, the quiet and peaceable possession of such premises, and will defend the title thereto against all persons who may lawfully claim the same, and such covenants shall be obligatory upon any grantor, his or her heirs and personal representatives, as fully and with like effect as if written at full length in such deed.

On its face, RCW 64.04.030 is silent on attorney fees and does not authorize their award.

This court, however, long ago recognized a narrow scenario where recovery of attorney fees was allowed as an element of damages in an action under RCW 64.04.030.  In Foley v. Smith, 14 Wn. App. 285, 296, 539 P.2d 874 (1975), we held that "[r]easonable attorneys' fees expended by [grantees] in good faith to defend their title are . . . recoverable as damages." (emphasis added) (citing 20 AM. JUR. 2D Covenants, Conditions, and Restrictions 152 (1965); 21 C.J.S. Covenants § 150(b) (1940)).  Our Supreme Court later followed the exception in Foley when it decided Edmonson v. Popchoi, 172 Wn.2d 272, 256 P.3d 1223 (2011).  The Edmonson court held that "the [RCW 64.04.030] warranty to defend means that, upon proper tender [of defense], a

grantor is obligated to defend in good faith and is liable for a breach of that duty," and therefore also "liable for the attorney fees incurred by the [grantee] in defense of their title." 172 Wn.2d at 279, 283. Again, the attorney fees expended in defending title were recoverable as an element of damages by the grantee of the warranty deed.

The upshot is a difference between an award of attorney fees as the prevailing party in an action, and attorney fees as the measure of damages incurred by a grantee in defending title after a grantor breaches the warranty deed statute. RCW 64.04.030 does not provide a basis for attorney fees; it merely requires grantors to defend title. Mellor v. Chamberlin, 100 Wn.2d 643, 649, 673 P.2d 610 (1983). Our case law demands nothing less, but also nothing more. We decline the Hortons' invitation to extend Foley beyond injured grantees who expend attorney fees in defending their title due to a grantor's breach of the warranty deed statute's duty to defend. The Hortons were the grantors of the statutory warranty deed and are not entitled to an award of attorney fees under RCW 64.04.030. Thus, the Hortons were not entitled to an award of attorney fees by statute.

C

Lastly, Fidelity argues that the trial court erred in determining that the Hortons were entitled to attorney fees under a recognized rule in equity. Fidelity contends that none of the four recognized grounds in equity that allow attorney fees in Washington applies to this action. Fidelity also contends that mutuality of remedies is inapplicable given that neither party had a right to attorney fees as the prevailing party. We agree.

As discussed above, Washington follows the "American rule" for attorney fees. See Leingang, 131 Wn.2d at 143. But there are "a number of grounds of equity which

allow for the award of fees." Leingang, 131 Wn.2d at 143. Washington law has recognized four equitable grounds for an award of fees: (1) bad faith conduct; (2) preservation of common funds; (3) protection of constitutional principles; and (4) the "private attorney general" doctrine. Pub. Util. Dist. No. 1 of Snohomish County v. Kottsick, 86 Wn.2d 388, 390-92, 545 P.2d 1 (1976).

Rather than argue the existence of one of the recognized equitable grounds, Horton asserts that if Fidelity had a legal basis for fees had it prevailed below, then Horton does, as well, and that the equitable principle of mutuality of remedies should apply. But that is not the case.

At the outset, we note that Fidelity conceded in its reply brief that it would not be entitled to attorney fees had it prevailed below. See Mellor, 100 Wn.2d at 649 ("RCW 64.04.030, requires grantors to defend title; it does not provide attorney fees to grantees who bring suit."). But even if that were not the case, our analysis remains the same. As discussed above, Fidelity was neither a party to the Coba PSA nor did its claims for breach of the warranty deed arise out of the Coba PSA. Further, RCW 64.04.030 does not authorize an award of attorney fees as the prevailing party in a suit. See Mellor, 100 Wn.2d at 649. In other words, as Fidelity correctly points out in their brief, there is no statutory or contractual right to attorney fees to which mutuality-of-remedies can be applied.

Still, the Hortons insist that "[i]f you put a defendant at risk for paying attorney fees, you are at risk as well if the defendant prevails." The problem for the Hortons, however, is that they cannot provide an appropriate legal basis for this maxim to apply in their case. Mutuality-of-remedies is simply not the panacea the Hortons purport it to

be.  The "American rule" is clear, and "[r]ecovery of attorney fees is the exception, not the rule, in Washington."  <u>Dalton M, LLC v. N. Cascade Tr. Servs., Inc.</u>, 2 Wn.3d 36, 56, 534 P.3d 339 (2023).

The Hortons were not entitled to an award of attorney fees on an equitable basis. We reverse and vacate the award of attorney fees.[2]

_Mann, J._

WE CONCUR:

_Díaz, J._

_Birk, J._

---

[2] The Hortons request an award of attorney fees on appeal.  Because they do not prevail, and were not entitled to attorney fees below, their request is denied.